OPINION *Page 2 
{¶ 1} Defendant-appellant Justin Adair appeals his conviction and sentence entered by the Muskingum County Court on one count of operating a motor vehicle while under the influence of drugs, in violation of R.C.4511.19(A)(1)(J). Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On January 4, 2007, Appellant was arrested on the aforementioned charge and cited on a minor misdemeanor charge of possession of marijuana, in violation of R.C. 2925.11(C)(3). Appellant appeared for arraignment before the trial court on January 8, 2007, and entered a plea of not guilty. Appellant subsequently filed a Motion to Suppress/Dismiss. The trial court scheduled a hearing on the motion for March 27, 2007.
 {¶ 3} The following evidence was adduced at the March 27, 2007 Suppression Hearing.
 {¶ 4} Deputy Gary Hargraves of the Muskingum County Sheriffs Department testified, on January 4, 2007, at approximately 8:15pm, he was on routine patrol in the area of Maysville Pike in South Zanesville when he observed a blue, four door vehicle turn into the parking lot of Fink's Southside Collision. Fink's is located at 2879 Maysville Pike, and was closed at the time. The deputy noted there are no ingress/egress roads leading to residential areas or other commercial establishments behind the auto body shop. Hargraves added the Sheriff's Department had received calls from area business owners regarding suspicious vehicles and activity at Fink's. He added, over the years, as the general area had developed into a large business district, and had an increase in *Page 3 
criminal activity, especially in the form of thefts. The deputy characterized the area as a "hot spot". Tr. of Suppression Hearing at 12.
 {¶ 5} Deputy Hargraves recalled the subject vehicle traveled around the left side of the auto body shop, behind the building, and out of his line of sight. The deputy, who was stopped at a traffic light, waited for the light to turn green, turned his cruiser around and traveled back to Fink's. Hargraves positioned his cruiser on the right side of the building in anticipation of passing the vehicle. Once he was behind the building, he observed the vehicle parked with the lights off and the occupants sitting inside. Deputy Hargraves moved his cruiser closer, radioed his position, and activated his take down lights and spotlight in order to illuminate the area behind the building.
 {¶ 6} Deputy Hargraves exited his cruiser, and the three occupants immediately and quickly exited their vehicle. Upon approaching, Hargraves, who was approximately 10 feet away from the vehicle, smelled a very strong odor of burnt marijuana. Concerned for his safety, as his backup had not yet arrived, the deputy instructed the occupants to place their hands on top of the vehicle and not remove them for any reason. Hargraves obtained identification from each of the individuals. The driver was identified as Justin Adair, Appellant herein. The passengers were Thomas Nessline and Daniel Minosky. The deputy patted down the three men for officer safety, and noticed the odor of burnt marijuana on each one's person.
 {¶ 7} Hargraves asked Appellant if he had anything on his person which was potentially harmful to the officer. The deputy recalled Appellant's eyes were red and glassy. Appellant appeared very nervous and was hesitant to reveal any information. Deputy Steve Blake arrived at the scene as backup, and placed Nessline in his cruiser *Page 4 
for questioning. Deputy Blake subsequently advised Deputy Hargraves he found portable digital scales and a plastic baggie containing what appeared to be marijuana on Nessline's person. When Deputy Hargraves asked Appellant if there were drugs or weapons in the vehicle, Appellant replied there was a marijuana cigarette in the center console. Hargraves located the cigarette where Appellant had indicated. The interior of the vehicle smelled strongly of burnt marijuana. Appellant denied using drugs, but the passengers admitted the three were smoking marijuana while driving around in the vehicle. At that point, Deputy Hargraves placed Appellant under arrest, and read him his Miranda Rights.
 {¶ 8} Deputy Hargraves stated he could not think of a legitimate reason for Appellant and his passengers to be behind the closed business at night, and reiterated the area was known for suspicious vehicles and thefts. The deputy noted it was unusual for all of the occupants of a vehicle to immediately exit upon being approached by an officer. The fact Appellant and his passengers did so concerned him. Based upon all the information, the deputy determined Appellant was under the influence of marijuana. Hargraves requested Appellant submit to a urine test. Appellant consented. The results of the test indicated Appellant was under the influence of marijuana.
 {¶ 9} After hearing the evidence, the trial court took the matter under advisement. The trial court overruled Appellant's Motion to Suppress via Entry filed April 24, 2007. Thereafter, appellant appeared before the trial court and entered a plea of no contest to one count of driving under the influence of drugs. The trial court found Appellant guilty and sentenced him accordingly. The trial court memorialized the *Page 5 
conviction via Judgment Entry, and the sentence via Sentencing Entry, both filed on May 10, 2007.
 {¶ 10} It is from this conviction and sentence Appellant appeals, raising the following assignments of error:
 {¶ 11} "I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO GRANT DEFENDANT-APPELLANT'S MOTION TO SUPPRESS EVIDENCE WHEREAS THE STATE LACKED PROBABLE CAUSE TO ARREST THE DEFENDANT FOR OPERATING A MOTOR VEHICLE UNDER THE INFLUENCE OF DRUGS.
 {¶ 12} "II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO GRANT DEFENDANT-APPELLANT MOTION TO SUPPRESS EVIDENCE WHEREAS THE STATE LACKED REASONABLE SUSPICION TO STOP THE DEFENDANT-APPELLANT."
 I {¶ 13} In his first assignment of error, Appellant maintains the trial court erred in overruling his motion to suppress as Deputy Hargraves did not have probable cause to arrest him for operating a motor vehicle while under the influence of drugs.
 {¶ 14} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See State v.Fanning (1982), 1 Ohio St.3d 19, 437 N.E .2d 583; State v. Klein (1991),73 Ohio App.3d 486, 597 N.E.2d 1141; State v. Guysinger (1993),86 Ohio App.3d 592, 621 N.E.2d 726. *Page 6 
Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See State v. Williams (1993), 86 Ohio App.3d 37,619 N.E.2d 1141, overruled on other grounds. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93,641 N.E.2d 1172; State v. Claytor (1993), 85 Ohio App .3d 623,620 N.E.2d 906; Guysinger, supra. As the United States Supreme Court held inOrnelas v. U.S., (1996), 517 U.S. 690, 116 S.Ct. 1657, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
 {¶ 15} In a motion to suppress, the trial court assumes the role of trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate witness credibility. Guysinger, supra, at 594 (Citations omitted). Accordingly, an appellate court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Id. (Citation omitted).
 {¶ 16} The legal standard for determining whether the police had probable cause to arrest an individual for OVI is whether, "at the moment of arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was *Page 7 
driving under the influence." State v. Homan (2000), 89 Ohio St.3d 421,427, 732 N.E.2d 952; Beck v. Ohio (1964), 379 U.S. 89, 91, 85 S.Ct. 223,13 L.Ed.2d 142. The arrest merely has to be supported by the arresting officer's observations of indicia of alcohol consumption and operation of a motor vehicle while under the influence of alcohol. State v. VanFossen (1984), 19 Ohio App.3d 281, 484 N.E.2d 191. In making this determination, the trial court must examine the totality of facts and circumstances surrounding the arrest. See State v. Miller (1997),117 Ohio App.3d 750, 761, 691 N.E.2d 703; State v. Brandenburg (1987),41 Ohio App.3d 109, 111, 534 N.E.2d 906.
 {¶ 17} Furthermore, when evaluating probable cause to arrest for OVI, "[t]he totality of the facts and circumstances can support a finding of probable cause to arrest even where no field sobriety tests were administered." Homan, supra, at 427. Probable cause to arrest may exist even without field sobriety tests results, if supported by such factors as: evidence that the defendant caused an automobile accident; a strong odor of alcohol emanating from the defendant; an admission by the defendant that he or she was recently drinking alcohol; and other indicia of intoxication, such as red eyes, slurred speech, and difficulty walking. Oregon v. Szakovits (1972), 32 Ohio St.2d 271, 291
N.E .2d 742; Fairfield v. Regner (1985), 23 Ohio App.3d 79, 84, 491 N .E.2d 333; State v. Bernard (1985), 20 Ohio App.3d 375, 376,485 N.E.2d 783; Westlake v. Vilfroy (1983), 11 Ohio App.3d 26, 27, 462 N.E.2d 1241.
 {¶ 18} Appellant contends Deputy Hargraves failed to determine whether his (Appellant's) ability to operate the vehicle had been affected in any way. Appellant adds mere appearance — bloodshot eyes, slurred speech, odor of alcohol — is insufficient to establish probable cause, and maintains Hargraves arrested him based upon mere *Page 8 
appearance. In support of his position, Appellant relies upon this Court's decision in Mansfield v. Lindsey (August 3, 1994), Richland App. No. 93-CA-100, unreported, in which we held "when a police officer does not observe impaired driving or impaired motor coordination, and has not performed field sobriety tests, an odor of alcohol is not sufficient probable cause for arrest for driving under the influence, even if it is coupled with other appearances of drunkenness such as blood shot eyes or slurred speech." Id.
 {¶ 19} We find Lindsey to be distinguishable from the instant action. The appellant in Lindsey had been injured in an automobile collision with a police cruiser, and was not considered at fault. Nonetheless, the appellant was arrested for DUI. This Court noted the appearances of drunkenness such as bloodshot eyes or slurred speech could have been contributed to injuries sustained in the accident. Id. Here, we have no other apparent potential contributor to Appellant's appearance.
 {¶ 20} We find under the totality of the facts and circumstances, Deputy Hargraves had probable cause to believe Appellant was operating a motor vehicle while under the influence of drugs. The occupants of the vehicle, including Appellant took the unusual action of exiting the vehicle upon the deputy's approach. Hargraves noticed a strong odor of burnt marijuana coming from the interior of the vehicle, as well as on Appellant's person and his passengers' persons; observed Appellant's eyes were red and glassy and he appeared nervous; and received information from the passengers all three were smoking marijuana while driving.
 {¶ 21} Appellant's first assignment of error is overruled. *Page 9 
 II {¶ 22} In his second assignment of error, Appellant argues the trial court erred in denying his motion to suppress as Deputy Hargraves lacked reasonable suspicion to stop his vehicle.
 {¶ 23} In Terry v. Ohio (1968), 392 U.S. 1, 22, 88 S.Ct. 1868, the United States Supreme Court determined "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." However, for the propriety of a brief investigatory stop pursuant to Terry, the police officer involved "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Id. at 21. Such an investigatory stop "must be viewed in the light of the totality of the surrounding circumstances" presented to the police officer. State v. Freeman (1980),64 Ohio St.2d 291, 414 N.E.2d 1044, paragraph one of the syllabus.
 {¶ 24} However, a stop does not have to meet the Terry test if it involves a consensual encounter. A consensual police encounter versus aTerry stop is explained in State v. Taylor (1995), 106 Ohio App.3d 741,667 N.E.2d 60, as follows:
 {¶ 25} "Encounters are consensual where the police merely approach a person in a public place, engage the person in conversation, request information, and the person is free not to answer and walk away. * * * The request to examine one's identification does not make an encounter nonconsensual. * * * Nor does the request to search a person's belongings. * * * The Fourth Amendment guarantees are not implicated in such an encounter unless the police officer has by either physical force or show of authority *Page 10 
restrained the person's liberty so that a reasonable person would not feel free to decline the officer's requests or otherwise terminate the encounter. * * * Once a person's liberty has been restrained, the encounter loses its consensual nature and falls into one of the next two Supreme Court categories.
 {¶ 26} "* * * a Terry stop or an investigatory detention. * * * is more intrusive than a consensual encounter, but less intrusive than a formal custodial arrest. The investigatory detention is limited in duration and purpose and can only last as long as it takes a police officer to confirm or to dispel his suspicions. * * * A person is seized under this category when, in view of all the circumstances surrounding the incident, by means of physical force or show of authority a reasonable person would have believed that he was not free to leave or is compelled to respond to questions." Id. at 747-748, 667 N.E.2d 60. (Citations omitted).
 {¶ 27} In the instant action, Deputy Hargraves observed Appellant drive his vehicle into the driveway of a closed business, travel behind the building, and out of his line of sight. The deputy approached from the opposite direction. He found the vehicle parked with its lights off and the occupants still inside. The deputy exited his cruiser and the three occupants immediately exited the vehicle as he approached them. His initial encounter with Appellant was merely to ascertain what Appellant and his passengers were doing.
 {¶ 28} We find Deputy Hargraves had the right to approach and investigate, and his encounter with Appellant was consensual; therefore, the Fourth Amendment guarantees were not implicated at that point.
 {¶ 29} Appellant's second assignment of error is overruled. *Page 11 
 {¶ 30} The judgment of the Muskingum County Court is affirmed.
 By: Hoffman, J. Gwin, P.J. and Delaney, J. concur. *Page 12 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Muskingum County Court is affirmed. Costs assessed to Appellant. *Page 1