[Cite as *Findlay v. Jackson*, 2014-Ohio-5202.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

CITY OF FINDLAY,

      PLAINTIFF-APPELLEE,                 CASE NO.  5-14-02

      v.

PHILLIP M. JACKSON,                   O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Findlay Municipal Court
Trial Court No. 13 TRC 08487

**Judgment Affirmed**

**Date of Decision:   November 24, 2014**

APPEARANCES:

     *John Kotyo* **for Appellant**

     *Alan D. Hackenberg* **for Appellee**

**ROGERS, J.**

{¶1} Defendant-Appellant, Phillip Jackson, appeals the judgment of the Findlay Municipal Court, denying his appeal of an administrative license suspension ("ALS") after being arrested for operating a vehicle while intoxicated ("OVI") in violation of Findlay Municipal Ordinance 333.01(A)(1)(a). On appeal, Jackson argues that the trial court erred by finding that the arresting officer had reasonable grounds to believe that Jackson was operating his vehicle in violation of an OVI ordinance. He also argues that the offense was legally impossible as charged. For the reasons that follow, we affirm the trial court's judgment.

{¶2} On September 5, 2013, Jackson was issued a citation for OVI in violation of Findlay Municipal Ordinance 333.01(A)(1)(a). The citation indicated that Jackson had refused chemical testing to determine his level of intoxication, which resulted in his license being administratively suspended. On September 23, 2013, Jackson filed a motion to suppress evidence obtained from an illegal arrest and an appeal of the ALS. The grounds for the appeal were that the arresting officer "lacked reasonable ground to believe that the Defendant was operating a vehicle in violation of Findlay's OVI ordinance" and that he had not been informed of the consequences of refusing to submit to chemical tests. (Docket No. 8, p. 2). On October 16, 2013, Jackson requested a stay of the ALS, which the trial court granted.

{¶3} A hearing on the suppression motion was held on January 15, 2014. Before the hearing began, the parties discussed and agreed to stipulate that the evidence presented at the hearing would be admissible for the purposes of determining the ALS appeal.

{¶4} Officer Lucas Benjamin of the Findlay City Police Department was called to testify. He testified that he had received training in the investigation of OVI offenses and passed a specialized class where he "learn[ed] to see the signs and to address some of the manners of it and you're able to prove that somebody is driving under the influence of alcohol." Hearing Tr., p. 15. He went on to testify that at approximately 2:15 a.m. on September 5, 2013, he was traveling northbound on North Main Street in Findlay. Officer Benjamin observed that the car in front of him did not have a functioning light to illuminate the rear license plate. The car turned right down Pine Street, and "it seemed like the vehicle did speed up a little bit and as I had turned right he immediately ducked into a house." *Id*. at p. 21. Officer Benjamin then turned on his emergency lights to initiate a traffic stop for the equipment violation.

{¶5} Office Benjamin testified that when he approached the vehicle, the driver's side window was only open a few inches and Jackson had his hands up. Officer Benjamin asked Jackson to relax and roll the window down. Jackson "acted like [] he did not know how to roll down the window on the vehicle so the

[passenger] had to reach from the passenger seat, had to reach over across him and then hit the switch and roll down the window for him." *Id.* at p. 23. Once the window was down, Officer Benjamin informed Jackson that he was stopped because of the equipment violation. When asked where he was coming from, Jackson told Officer Benjamin that he had picked up his girlfriend from Nino's, a bar that serves alcoholic beverages.

{¶6} While searching for his license, Jackson "pulled out several credit cards and some business cards as well until I was able to tell him that the driver's license was right on top of all the other cards that he had pulled out and then he pretended like he did not see it, he said oops and then handed the I.D. to me." *Id.* at p. 24.

{¶7} Officer Benjamin further testified:

[I]t seemed as if that his movements were slow, he had glossy [sic] eyes, his eyes were bloodshot and I could smell an odor of alcoholic beverage emitting from his breath.

* * *

It just seemed as if like when he was removing his driver's license he had slow movements, his dexterity was when he was trying to get the cards apart he was having a hard time doing that as well. It just seemed as if the movements were very slow as I was speaking with him.

*Id.* at p. 26-27. Officer Benjamin then took Jackson's driver's license back to his patrol car to check his driving status, where nothing came back as irregular.

-4-

{¶8} Once Officer Benjamin returned, he asked Jackson to step out of the vehicle. In response, Jackson "got very irate and said that he was not going to step out of the vehicle until he spoke to his attorney." *Id.* at p. 28. Officer Benjamin testified that he "advised [Jackson] that I have a reasonable suspicion that he's been drinking and driving tonight and I asked him to step out of the vehicle so I could explain to him the field sobriety test that I wanted him to perform * * *." *Id.* at p. 31. When Jackson was informed that he was suspected of driving under the influence, he continued to refuse to exit the vehicle and "at one point in time he threw his hands up and said [']I'm not fucking getting out of this vehicle until I talk to my lawyer.['] " *Id.* at p. 32.

{¶9} After these repeated refusals, Jackson was informed that he would be forcibly removed from the car if he did not comply. Jackson continued to refuse and Officer Benjamin forcibly removed him from the car and placed him under arrest. Officer Benjamin testified that Jackson had been compliant until he was asked to step out of the car, when he became "very angry, irate, yelling, all kinds of different things, basically." *Id.* at p. 35.

{¶10} On cross-examination, Officer Benjamin admitted that he was able to understand Jackson when he spoke, but reiterated that his speech was slurred. Officer Benjamin testified that the factors that gave him a reasonable suspicion to believe Jackson was drinking and driving were "the odor, the bloodshot glassy

eyes, the slurred speech and the fact that he had a driver's license on the top of his credit cards and he did not hand it to me, it seemed like he was fumbling through * * *." *Id.* at p. 50. He admitted that the slurred speech and bloodshot eyes could have been caused by fatigue, and that the odor could have come from the passenger in the car. After Officer Benjamin's testimony, the City had no further witnesses. Jackson asked the court to summarily grant the motion to suppress, which was denied.

{¶11} Melina McGee was called as Jackson's first witness. She testified that she was Jackson's girlfriend on the night in question and was the passenger in the car. She had been drinking at Nino's with friends, having between four and five beers, and that alcohol had been spilled on her jacket over the course of the evening. She eventually called Jackson to come pick her up as she was unable to drive home. While on the phone with Jackson, McGee did not notice that his speech was slurred. She testified that Jackson was dropped off at the bar by a friend, as he was going to drive her home in her own car. She did not see Jackson drink any alcohol from the time he arrived until they left the bar.

{¶12} Upon leaving the bar, they entered her vehicle and travelled towards Hillcrest. McGee testified that after a few blocks, Jackson saw a police car behind them, and they "kept driving and kinda [sic] noticed that he was getting a little bit closer so he pulled on Pine Street and then the cop car pulled behind us too and

then the lights came on and then we stopped at whatever house." *Id.* at p. 62. She testified that she did not have to roll Jackson's window down, that she did not notice anything unusual about the way Jackson was acting, and that Jackson rarely drove her car and was unfamiliar with it. After being asked for his license and registration, she testified that Jackson was searching for his attorney's card. During Jackson's interaction with the police officer, "he seemed nervous but calm at the same time." *Id.* at p. 66. She testified that Jackson was not arguing with the officer, instead "he was more questioning the officer." *Id.* Jackson asked the officer why he had to exit the vehicle and asked to speak to his attorney. She testified that after refusing to exit the vehicle, Jackson was forcibly removed from the car and placed under arrest.

{¶13} On cross examination, McGee admitted that she did not live in Hillcrest and that the amount of alcohol she drank that night had impaired her own ability to drive. She did not see Jackson get dropped off at the bar and only spent a few minutes with him before they left. She testified that Jackson expressed concern that a police car was behind them and turned down Pine Street in the hopes that the police car would pass them.

{¶14} After McGee's testimony, Jackson took the stand. He testified that he spent time with a friend during the day and did not drink any alcoholic beverages. He received a call from McGee to pick her up from Nino's at

-7-

approximately 1:00 a.m. on September 5.  His friend dropped him off at the bar shortly thereafter.  Jackson then located McGee and asked her if she was ready to leave, she indicated that she was, and they left.  He testified that he did not eat or drink anything while at Nino's and was there for approximately two minutes.  They left the bar in McGee's car, heading North on Main Street.  He noticed the police car following them and was nervous due to a previous encounter with law enforcement where he was charged with drinking alcohol while his friends were not.

{¶15} After he was pulled over, Officer Benjamin asked him for his license and registration.  Jackson testified that "at that time I had been through previous investigations I have known to move very slowly so that you know, they don't think I'm moving quickly so at this time my hands were up, when he told me to put my hands on the wheel I did so * * *." *Id.* at p. 85-86.  He testified that he did not use any profanity when speaking with the officer and was cooperative to the best of his ability.  He also testified that he did not have any trouble rolling down the window.

{¶16} When asked when his interaction with the officer changed, Jackson testified:

> It changed I suppose when he came back from going through our licenses, he suspected odor of alcohol and which I told him that I had picked [McGee] up from the Nino's Bar and that it was her that probably smelled like alcohol and that I was just picking her up to

-8-

> take her back home, I had not even been at Nino's for that long. And at that time he asked me to step out of the car and I did not understand why. I said you know, I haven't been drinking, this isn't my car, I will get the license plate light, I don't understand why you would want to get me out of the car for any reason.

*Id.* at p. 87. Jackson refused to exit the vehicle and asked to speak to his attorney. The officer did not allow Jackson to call his attorney, but asked two or three more times that he exit the vehicle. The officer eventually forcibly removed Jackson from the car and arrested him.

> **{¶17}** On cross examination, the following exchange took place:
>
> Q: So when you picked [McGee] up at the bar and headed North on Main Street you weren't taking her home like you testified, correct?
>
> A: I was taking her to Chad's place. Eventually we were going to go home.
>
> Q: But you've testified actually twice and we can play it back but your testimony to the court in response to [your attorney's] question was that you were taking her home.
>
> A: Yes. I was taking her home and –
>
> Q: That's all. You were taking her home; correct? That was what you testified to, right?
>
> A: Yes. I testified to the fact that I was taking her home, not in that particular drive but I was going to take her home.

*Id.* at p. 94. When asked why he failed to exit the vehicle when requested, he testified:

I personally felt like I didn't need to get out of the car, he wanted to get me out of the car, he forcefully put me out of the car but you know I mean I was going to sit there until he did anything otherwise or until I called my lawyer.

* * *

Q: You disagreed with what [the officer] was doing and therefore you weren't going to cooperate and get out of the vehicle?

A: Yes.

*Id.* at p. 95-96.

{¶18} At the conclusion of Jackson's testimony, Officer Benjamin's narrative report was admitted into evidence without objection. The narrative report was similar to Officer Benjamin's testimony. After admitting the evidence and hearing arguments, the trial court indicated that a ruling on the suppression motion would be forthcoming.

{¶19} On January 22, 2014, the City and Jackson stipulated to the following:

1. That all evidence and arguments received by this court during the suppression hearing conducted on January 15, 2013 in this matter shall be fully admissible and may be used by the Court for all purposes in ruling on the ALS appeal also pending before the court and filed in this matter. No further evidence will be presented.

2. Defendant hereby withdraws his assigned error that he was not fully advised of the consequences of a refusal and the court need only determine whether the arresting law enforcement officer lacked reasonable ground to believe that the Defendant was operating a vehicle in violation of the applicable OVI ordinance.

> The court shall apply the standards governing an ALS appeal as related to the burden and degree of proof.

(Docket No. 20, p. 1).

{¶20} On February 4, 2014, the trial court denied Jackson's suppression motion. The entry denying the motion incorporated the facts as they were presented in the arresting officer's narrative report. The trial court also found Officer Benjamin's testimony credible, while McGee's and Jackson's testimony was not. Specifically, the court found that McGee's prior relationship with Jackson, her stated concern for his well-being, and that "she had consumed an amount of alcohol that affected her cognitive and physical abilities" diminished her credibility. (Docket No. 24, p. 6). Jackson's testimony was not found credible in light of a prior conviction for OVI, which provided "a motive to minimize his culpability." (*Id.*). Further, the trial court noted that Jackson changed his story as to where he was taking McGee that night. The trial court found that the officer had reasonable grounds to stop Jackson's car for an equipment violation.

{¶21} The trial court then examined the totality of the circumstances to determine whether probable cause existed for the arrest. The court began its analysis by determining whether "a reasonable, articulable suspicion existed for [the officer] to believe [Jackson] was impaired and in requesting [Jackson] to perform field sobriety tests." (*Id.* at p. 7). The court utilized a factor test

described in *State v. Evans*, 127 Ohio App.3d 56 (8th Dist.1998).[1] The court found that the time of day, being at 2:15 a.m. on a Thursday morning, where they were coming from, Nino's bar, and that Jackson drove erratically by "[speeding] up and [ducking] into a driveway in an attempt to avoid Officer Benjamin" weighed in favor of finding that a reasonable, articulable suspicion existed. (*Id.* at p. 5). Further, Jackson's bloodshot eyes, slurred speech, and belligerent attitude, as well as the odor of alcohol on Jackson's breath and his fumbling for his driver's license, when taken together, gave Officer Benjamin a reasonable, articulable suspicion that Jackson was impaired.

{¶22} Next, the trial court determined whether this reasonable, articulable suspicion became probable cause to arrest by utilizing the same factors as well as "the additional factor that [Jackson] refused to get out of the car, let alone, do any field sobriety tests." (*Id.* at p. 7). The trial court indicated that Jackson's requests for an attorney were not an adequate basis to refuse to exit the vehicle under these circumstances, and ultimately found that the arrest was supported by probable cause.

---

[1] The factors include, but are not limited to (1) time and day of the stop; (2) the location of the stop; (3) erratic driving that shows lack of coordination; (4) a cognizable report that the driver is intoxicated; (5) condition of the suspect's eyes; (6) speech impairments; (7) odor of alcohol from the interior of the car or the suspect's breath; (8) the intensity of the odor; (9) the suspect's demeanor; (10) actions that indicate a lack of coordination; and (11) an admission of alcohol consumption. *Evans*, 127 Ohio App.3d at 63, fn. 2. The arresting officer's experience in dealing with drunk drivers can also be taken into account. *Id.*

{¶23} That same day, the trial court ruled on Jackson's ALS appeal.[2] In its entry, the trial court stated that it "hereby incorporates by reference its decision from the motion to suppress as and for its ruling on the administrative license appeal." (Docket No. 21, p. 1). The trial court denied the ALS appeal but continued the stay pending appeal.

{¶24} Jackson timely filed this appeal, presenting the following assignments of error for our review.

### Assignment of Error No. I

**THE TESTIMONY AND WRITTEN REPORT OF THE ARRESTING OFFICER SHOW THAT HE HAD NOT PROPERLY CONCLUDED AT THE TIME OF THE ARREST THAT HE HAD REASONABLE GROUND TO BELIEVE THAT APPELLANT HAD BEEN OPERATING A MOTOR VEHICLE WHILE IMPAIRED BUT MERELY A REASONABLE SUSPICION.**

### Assignment of Error No. II

**THE FACTUAL AND LEGAL CONCLUSIONS MADE BY THE COURT MATERIAL TO THE ISSUE OF IMPAIRMENT, SUCH AS ERRATIC DRIVING AND REFUSAL TO PERFORM FIELD SOBRIETY TESTS BY APPELLANT, ARE RESPECTIVELY, NOT SUPPORTED BY COMPETENT, CREDIBLE EVIDENCE AND ARE LEGALLY INSUFFICIENT.**

---

[2] While the suppression motion and the ALS appeal are inextricably linked in this case, only the trial court's decision to continue the license suspension is under our review at this time. Indeed, the ALS appeal is separate and distinct from the criminal case. *State v. Gustafson*, 76 Ohio St.3d 425 (1996), paragraph two of the syllabus.

*Assignment of Error No. III*

**THE ARREST WAS BASED ON THE CHARGE OF "OPERATING A MOTOR VEHICLE UNDER THE INFLUENCE REFUSAL . . .(SIC)", AN OFFENSE LEGALLY IMPOSSIBLE TO HAVE BEEN COMMITTED UNDER THE EXISTING FACTS AND CIRCUMSTANCES AT THE MOMENT OF ARREST.**

**{¶25}** Due to the nature of the assignments of error, we elect to address the first and second assignments together.

*Assignments of Error Nos. I & II*

**{¶26}** In Jackson's first and second assignments of error, he argues that the trial court's factual findings that he drove erratically and refused to perform field sobriety tests are not supported by competent, credible evidence. He further argues that the totality of the circumstances did not provide Officer Benjamin with reasonable grounds to believe that Jackson was driving in violation of an OVI ordinance. We agree in part and disagree in part.

*I. Standard of Review*

**{¶27}** We review a trial court's ruling on an ALS appeal to determine whether it is supported by competent, credible evidence. *State v. Mallin*, 6th Dist. Ottawa No. OT-06-040, 2007-Ohio-4476, ¶ 26. Further, R.C. 4511.197(C) restricts the scope of an ALS appeal to the determination of whether statutory conditions have been met. *Id.* One of these conditions is "[w]hether the arresting law enforcement officer had reasonable ground to believe the arrested person was

-14-

operating a vehicle * * * in violation of a municipal OVI ordinance * * * and whether the arrested person was in fact placed under arrest[.]" R.C. 4511.197(C)(1). "Reasonable grounds" is substantially equivalent to probable cause, because "a lawful arrest, including a constitutional stop, must take place before a refusal to submit to chemical tests of one's blood, breath, urine or other bodily substances triggers a license suspension." *Watford v. Ohio Bur. of Motor Vehicles*, 110 Ohio App.3d 499, 502 (8th Dist.1996); *see also Stockhauser v. Bureau of Motor Vehicles*, 2d Dist. Montgomery No. 11781, 1990 WL 68977, * 3 (May 21, 1990). While the state must present a prima facie case that the officer had probable cause to arrest in an ALS appeal, the person appealing the suspension has the burden of proof. R.C. 4511.197(D); *State v. Harding*, 7th Dist. Mahoning No. 13 MA 131, 2014-Ohio-884, ¶ 13.

{¶28} Here, it is undisputed that Jackson was lawfully stopped for the equipment violation. However, Jackson argues that Officer Benjamin lacked probable cause to arrest him for OVI, in essence arguing that the City failed to make its prima facie case. We will discuss whether each contested factual finding is supported by competent, credible evidence before turning our analysis to whether the City made its prima facie case that Officer Benjamin had probable cause to arrest Jackson for OVI.

## II. Factual Findings

### A. Erratic Driving

{¶29} Jackson argues that the trial court's factual determination that he was driving erratically is not supported by competent, credible evidence. We agree.

{¶30} Examples of erratic driving include "speeding, weaving [and] unusual braking * * *." *Evans*, 127 Ohio App.3d at fn. 2. However, this court has found that "speeding alone does not constitute erratic operation of a vehicle." *State v. Bailey*, 3d Dist. Logan No. 8-07-02, 2008-Ohio-2254, ¶ 21. Further, pulling into someone else's driveway is not erratic driving. *See State v. Rhude*, 91 Ohio App.3d 623, 626 (12th Dist.1993) (finding that a driver did not operate his vehicle erratically when he pulled into two separate driveways.).

{¶31} Here, there is no indication of what would typically be considered erratic driving, such as weaving, unusual braking, drifting across the center line or driving over a curb. The only evidence of erratic driving is that Jackson turned down a side street, increased his speed, and pulled into a private drive. Standing alone, none of these things would support an investigatory stop, and thus none of them constitute erratic driving. While Jackson's motives for turning down the side street and into a private drive may be questionable, they do not retroactively make his driving before the stop erratic. Therefore, the trial court's finding that Jackson drove erratically is not supported by competent, credible evidence.

### B. Refusal to Perform Field Sobriety Tests

**{¶32}** Next, Jackson argues that the trial court erred in finding that he had refused to perform field sobriety tests, when he merely refused to exit the vehicle. In the alternative, Jackson argues that even if he had refused to perform the field sobriety tests, the trial court improperly considered the refusal as a factor when making a probable cause determination. We disagree.

### 1. Jackson Refused to Perform Field Sobriety Tests

**{¶33}** Jackson argues that Officer Benjamin was required to request that he perform the field sobriety tests after he was removed from the car for his actions to constitute a refusal. Jackson relies on Judge Abele's concurring opinion in *State v. Justice*, 4th Dist. Pike No. 99CA631, 1999 WL 1125113 (Nov. 16, 1999) to support the proposition that he should have been asked to perform the tests again once he was removed. However, in *Justice*, the arresting officer "testified that he *did not ask* [the defendant] to perform field sobriety tests because of [his] belligerent and abusive attitude." (Emphasis added.) *Id.* at *4. Indeed, the majority noted that a refusal to perform field sobriety tests is indicative of impaired driving, but it did not apply because the defendant was never asked to perform the tests. *Id.* We do not dispute that there can be no refusal where there is no request. However, *Justice* only supports the proposition that the request must be made, not when it must be made. The only restriction on using the refusal

to perform a field sobriety test is when the request occurs after the arrest. *State v. May*, 7th Dist. Columbiana No. 10 CO 23, 2011-Ohio-6637, ¶ 30.

**{¶34}** As the Ohio Supreme Court has noted: "[O]nce a vehicle has been lawfully detained for a traffic violation, the driver may be ordered from his car without violating the Fourth Amendment proscription of unreasonable search and seizure." *State v. Darrington*, 54 Ohio St.2d 321, 323 (1978), citing *Pennsylvania v. Mimms*, 434 U.S. 106, 111, 98 S.Ct. 330 (1977). Therefore, Officer Benjamin lawfully ordered Jackson out of the vehicle once he was pulled over for the equipment violation. However, it is unclear from the record whether Officer Benjamin informed Jackson why he was being asked to exit the vehicle when the request was first made. Both Officer Benjamin's testimony and the narrative of the police report state that he asked Jackson to exit so he could explain to him his options. Jackson refused to exit the vehicle. Without further explanation of what those options were, had Jackson been removed and arrested at this point, it would be similar to the circumstances in *Justice*.

**{¶35}** However, Officer Benjamin's testified that he "asked [Jackson] to step out of the vehicle so I could explain to him the field sobriety test that I wanted him to perform and I needed him to step out of the vehicle so I could speak with him about that." Hearing Tr., p. 31. He went on to testify that he asked Jackson to exit the vehicle "to explain the field sobriety test to him." *Id.* at 32. The narrative

of the police report states that he advised Jackson "that he has the right to refuse the tests I'm going to ask him to perform * * *."  (Docket No. 27, Defendant's Exhibit 1, p. 2).  While Jackson claimed that he did not understand why he was being asked to exit the vehicle, nothing in the record precluded the trial court from believing Officer Benjamin's testimony over Jackson's.  Indeed, Jackson testified that Officer Benjamin told him that "he suspected odor of [an alcoholic beverage] * * * and at that time he asked me to step out of the car * * *."  Hearing Tr., p. 87.  This undercuts Jackson's claim that he did not know why he was being asked to exit the vehicle.[3]

**{¶36}** Here, Officer Benjamin lawfully ordered Jackson out of the vehicle. He refused.  Officer Benjamin explained that he wanted Jackson to exit the vehicle to explain the field sobriety tests to him.[4]  Jackson continued to refuse.  Jackson's refusal to exit the vehicle under these circumstances constitutes a refusal to perform the field sobriety tests.

*2.  Use as a Factor in Probable Cause Determination*

**{¶37}** Jackson argues that even if the court was correct in finding that he had refused the field sobriety tests, "a refusal to perform field sobriety tests alone

---

[3] We note that administering a field sobriety test is equivalent to the gathering of physical evidence and not testimonial in nature; therefore no right to counsel attaches. *State v. Perez*, 1st Dist. Hamilton Nos. C-040363, C-040364, C-040365, 2005-Ohio-1326, ¶ 14-17; *see also State v. Pace*, 3d Dist. Hancock No. 5-12-30, 2013-Ohio-2143, ¶ 24.  Therefore, Jackson's request to speak to his attorney before exiting the vehicle and performing field sobriety tests has no impact on our analysis.
[4] On appeal, Jackson does not raise as an assignment whether Officer Benjamin had reasonable and articulable suspicion to request a field sobriety test.

cannot form a basis for a finding of probable cause or reasonable ground to arrest an individual for OVI." (Appellant's Br., p. 14). However, the trial court did not rely exclusively on the refusal to perform the field sobriety tests. The trial court used a factor test to determine whether Officer Benjamin had reasonable and articulable suspicion to request that Jackson perform field sobriety tests. When turning its attention to whether probable cause existed, the trial court stated that it was utilizing the same factors as well as "the *additional* factor that the Defendant refused to get out of the car, let alone, do any of the field sobriety tests." (Emphasis added.) (Docket No. 24, p. 7). It is clear that the trial court properly weighed the refusal with the other factors to determine whether probable cause existed under the totality of the circumstances.

{¶38} Jackson further contends that the court's reliance on *State v. Molk*, 11th Dist. Lake No. 2001-L-146, 2002-Ohio-6926, is misplaced, arguing that the case stands for the proposition that a refusal to perform field sobriety tests cannot be a factor unless it is coupled with the "element of significant impairment * * *." (Appellant's Br., p. 14). However, the court in *Molk* found, without qualifying language, that the "[a]ppellant's refusal to submit to field sobriety tests is another factor that may be considered in determining the existence of probable cause in an arrest for driving under the influence of alcohol." *Molk* at ¶ 19. Indeed, other districts have similarly found that the refusal to perform field sobriety tests can be

considered a factor without any requirement of first proving substantial impairment. *See State v. May*, 7th Dist. Columbiana No. 10 CO 23, 2011-Ohio-6637, ¶ 29; *Village of Kirtland Hills v. Deir*, 11th Dist. Lake No. 2004-L-005, 2005-Ohio-1563, ¶ 19; *State v. Shea*, 5th Dist. Licking No. 02-CA-54, 2002-Ohio-6019, ¶ 12-13; *State v. Blosser*, 10th Dist. Franklin Nos. 99AP-816, 99AP-867, 2000 WL 329086, *4 (Mar. 30, 2000); *State v. Buehl*, 9th Dist. Summit No. 19469, 2000 WL 108877, *3 (Jan. 26, 2000); *State v. MacClintock*, 6th Dist. Lucas No. L-97-1419, 1998 WL 667010, *5 (Sept. 30, 1998); *State v. Siebert*, 12th Dist. Warren No. CA97-07-079, 1998 WL 117149, *3 (Mar. 16, 1998).[5]

**{¶39}** Lastly, Jackson argues:

> [P]rior to his arrest, [Officer Benjamin] stated in his report that he had told [Jackson] that he had the "right to refuse the tests I'm going to ask him to perform." It seems unfair that the officer would tell [Jackson] that he could refuse to perform the tests only to have that same refusal be used against him.

(Appellant's Br., p. 12). While the record indicates that Officer Benjamin asked Jackson to exit the vehicle so that that they could discuss his options, Officer Benjamin did not say that there would be no repercussions for refusing to perform the field sobriety tests. Further, this court has specifically found that a refusal to

---

[5] We note that a trial court cannot consider the refusal to perform field sobriety tests as a factor where the officer lacks a reasonable articulable suspicion that the suspect is impaired that would justify the request. *State v. Morgan*, 2d Dist. Clark No. 07-CA-67, 2007-Ohio-6691, ¶ 20. Further, where the request to perform the field sobriety test is made only after the arrest for OVI, it cannot be considered as a factor. *State v. May*, 7th Dist. Mahoning No. 10 CO 23, 2011-Ohio-6637, ¶ 30. However, on appeal, Jackson does not argue a lack of reasonable and articulable suspicion of impairment and Officer Benjamin's request to perform the field sobriety tests came before the arrest.

perform field sobriety tests can be considered as a factor for probable cause at an ALS appeal, without any requirement that the suspect be warned about the repercussions. *See State v. Fry*, 3d Dist. Seneca No. 13-95-11, 1995 WL 328120, *2 (June 1, 1995). We find nothing "unfair" about using Jackson's refusal to exit the vehicle and perform field sobriety tests to determine whether they created probable cause to arrest for OVI in his ALS appeal. Therefore, the trial court did not err by considering Jackson's refusal as a factor in its probable cause determination.

### III. *Probable Cause Determination*

{¶40} Next, Jackson argues that the City failed to make its prima facie case that Officer Benjamin had probable cause to arrest him for OVI. Specifically, he argues that Officer Benjamin's own testimony reflects that he did not believe he had probable cause to arrest. However, "in making probable cause determinations, an officer's subjective beliefs hold little sway." *State v. McDonald*, 4th Dist. Washington No. 04CA7, 2004-Ohio-5395, ¶ 31. Determining whether probable cause exists "is a question of law. The arresting officer's subjective belief or motivation in the detention of an individual is not material to the legality of the detention; the correct test is whether there was objective justification for the detention and arrest." *State v. Deters*, 128 Ohio App.3d 329, 333 (1st Dist.1998).

Therefore, we need not determine whether Officer Benjamin believed he had probable cause, as it is irrelevant to our determination.

{¶41} Instead, as the Ohio Supreme Court has noted:

In determining whether the police had probable cause to arrest an individual for [OVI], we consider whether, at the moment of arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence.

*State v. Homan*, 89 Ohio St.3d 421, 427 (2000), *superseded by statute on other grounds as stated in State v. Boczar*, 113 Ohio St.3d 148, 2007-Ohio-1251, ¶ 23. "Probable cause to arrest does not have to be based, in whole or in part, upon a suspect's poor performance on one or more field sobriety tests." *Columbus v. Bickis*, 10th Dist. Franklin No. 09AP-898, 2010-Ohio-3208, ¶ 21. Instead, we must consider the totality of the circumstances when making a probable cause determination. *Id.*; *State v. Bailey*, 3d Dist. Logan No. 8-07-02, 2008-Ohio-2254, ¶ 25.

{¶42} Having determined that the trial court erred in considering erratic driving as a factor, we must review whether the remaining factors constituted a prima facie case that Officer Benjamin had probable cause. Turning to the facts available at the time of the arrest; Jackson was driving at 2:15 a.m. on a Thursday morning, coming back from an establishment that sold alcohol. Jackson displayed unusual behavior in that he had his hands up when Officer Benjamin approached

the car, and only had the window rolled down a few inches. Further, he admitted to Officer Benjamin that he was nervous and was attempting to avoid the officer when he turned down Pine Street and pulled into a driveway. Jackson's unusual behavior and admitted nervousness are factors that can be considered when making a probable cause determination. *See State v. Adair,* 5th Dist. Muskingum No. CT2007-0035, 2007-Ohio-7176, ¶ 20.

{¶43} Officer Benjamin's report stated that he detected a strong odor of an alcoholic beverage on Jackson's breath and that he observed bloodshot eyes, slurred speech, and slow movements; Jackson displayed a lack of coordination in that he required help in rolling down his window and then fumbled through his papers to find his driver's license; when asked to step out of the car, he became belligerent and used profanity; and he refused to exit the vehicle and refused to perform field sobriety tests. All of these are factors that are indicia of impairment. We find that, under the totality of the circumstances, the City made a prima facie case that Officer Benjamin had probable cause to arrest Jackson for OVI.

{¶44} Accordingly, Jackson's first and second assignments of error are overruled.

*Assignment of Error No. III*

{¶45} In Jackson's third assignment of error, he argues that the ALS appeal should have been granted, as his arrest was based upon a charge that was legally

-24-

impossible. Specifically, he argues that there were defects in his charging instrument. We disagree.

**{¶46}** This issue was never argued before the trial court. As a result, it is waived for the purposes of appeal, save all but plain error. *See* App.R. 12(A)(2), 16(a)(7); *Shanklin v Lowman*, 3d Dist. Logan No. 8-10-07, 2011-Ohio-255, ¶ 40. Plain errors are obvious, prejudicial, and would otherwise undermine public confidence in judicial proceedings if allowed to stand. *Shanklin* at ¶ 41.

**{¶47}** As discussed, an ALS appeal is limited to challenging specific defects, which are (1) whether the officer had reasonable grounds to believe the arrested person was operating the motor vehicle in violation of an OVI statute or local ordinance; (2) whether the arrested person was asked to submit to chemical tests; (3) whether the arresting officer explained the consequences of refusing the chemical test; (4) whether the person then refused.[6] R.C. 4511.197(C). Defects in the charging instrument are not grounds for an ALS appeal, nor do we find that such a challenge fits within any of the four grounds that are allowed.

**{¶48}** Accordingly, Jackson's third assignment of error is overruled.

---

[6] Under certain circumstances, a person can also appeal whether the test came back with an alcohol concentration higher than the legal limit. R.C. 4511.197(C)(4)(b). However, this is irrelevant to the appeal, as Jackson refused to take the test.

{¶49} Having found no error prejudicial to Jackson in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI, P.J., concurs.**

**SHAW, J., concurs in Judgment Only.**

**/jlr**